UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| GEORGE MASSONG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | 4:12-cv-00031-RLY-DML |
| DEARBORN COUNTY SHERIFF, ) | |
| SERGEANT GARY STEELE, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.   Introduction**

Plaintiff, George Massong, brought this action against Defendants, Dearborn County Sheriff ("DCS") and Sergeant Gary Steele, for claims arising out of his pre-trial detention at the Dearborn County Jail. Plaintiff alleges that, during his detainment, he was assaulted and battered by a fellow inmate, and denied adequate health care and nutrition. Plaintiff filed a "failure to protect" claim against Defendant Steele under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, actionable pursuant to 42 U.S.C. § 1983 (2013), and related state law negligence claims against Defendant DCS. This matter now comes before the court on Defendants' Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56(a). For the reasons set forth below, the court **DENIES** Defendants' motion.

1

## II. Discussion

### A. Summary Judgment Standard

Rule 56(a) authorizes the court to grant summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court is required to enter summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Initially, the moving party bears the burden of demonstrating the basis for its motion by citing to specific materials in the record (e.g., depositions, documents, affidavits, admissions, interrogatories) that demonstrate an absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323; FED. R. CIV. P. 56(c)(1)(A). Importantly, the moving party is not required to produce evidence that negates the opposing party's claim. *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party: "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted).

In reviewing a motion for summary judgment, the court construes the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Omnicare, Inc. v. Unitedhealth Group, Inc.*, 629 F.3d 697, 705 (7th Cir. 2011). For purposes of summary judgment, Defendants do not dispute the material facts alleged by Plaintiff in his complaint.

### B. Fourteenth Amendment Standard

According to Plaintiff's Complaint, his Section 1983 claim was brought pursuant to the Due Process Clause of the Fourteenth Amendment. However, in the briefing for Defendants' summary judgment motion, the parties argue as if the claim was brought pursuant to the cruel and unusual punishment clause of the Eighth Amendment. The court briefly addresses this discrepancy.

Whether a plaintiff's claim, which arises from injuries incurred during his detention, is brought under the Eighth or Fourteenth Amendment hinges upon whether the plaintiff was detained while he was awaiting trial or because he was serving a sentence after already being convicted. *Frake v. City of Chicago*, 210 F.3d 779, 781 (7th Cir. 2000). In *Frake*, the Seventh Circuit reasoned that pre-trial detainees, not found guilty of a crime, cannot be "punished" within the meaning of the Eighth Amendment. For that reason, Plaintiff's claim that he was assaulted during his detainment before trial should be analyzed under the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment's prohibition against cruel and unusual punishment. *Frake*, 210 F.3d at 781 (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)). *See also Guzman v.*

3

*Sheahan*, 495 F.3d 852, 856 (7th Cir. 2007); *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002).

The slight difference in the Section 1983 claim's designation ultimately has no affect on the court's analysis: "The protections for pre-trial inmates under the Due Process Clause are at least as great as those afforded inmates under the Eighth Amendment, and the standards are frequently considered to be analogous." *Guzman*, 495 F.3d at 856 (internal citations and quotation marks omitted). *See also Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002) ("Since Washington was a pre-trial detainee, we examine his § 1983 claim under the Due Process Clause rather than the Eighth Amendment. . . . Since the parties base their arguments on Eighth Amendment precedent, we examine them under that standard"); *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002) ("[W]hen considering a pretrial detainee's claim of inadequate medical care, we frequently turn to the analogous standards of Eighth Amendment jurisprudence.").

Pursuant to both the Eighth and Fourteenth Amendments, jail officers have a duty to protect inmates from violence inflicted by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, not every injury suffered by a detainee constitutes a civil rights violation. *Id.* at 847; *Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005). A plaintiff bringing a "failure to protect" claim against jail staff must demonstrate that: "(1) he was incarcerated under conditions posing a substantial risk of serious harm and (2) the defendants acted with deliberate indifference to that risk." *Sousa v. Anglin*, 481 Fed. Appx. 265, 267 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 834). The Seventh Circuit

summarized these two elements by concluding that jail officers incur liability under Section 1983 if they are "aware of a substantial risk of serious injury to [an inmate] but nevertheless fail[] to take appropriate steps to protect him from a known danger." *Rice v. Corr. Med. Servs. (In re Estate of Rice)*, 675 F.3d 650, 669 (7th Cir. 2012) (quoting *Guzman*, 495 F.3d at 857).

Refusing to adopt an objective test for the second element of a "failure to protect" claim, the *Farmer* Court instead established a subjective standard for "deliberate indifference":

> [A] prison official cannot be found liable . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

511 U.S. at 837. This language highlights the fact that defendants must have *actual* knowledge of a substantial risk to an inmate. *See Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002); *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). Notably, a showing of negligence or even gross negligence does not prove deliberate indifference. *Farmer*, 511 U.S. at 835. *See also Fisher*, 414 F.3d at 662. Rather, the Seventh Circuit explained that deliberate indifference is synonymous with "intentional or reckless conduct." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999)). In that context, "reckless" refers to "conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." *Id.*

Importantly though, a prison official cannot be held liable simply because, in hindsight, he could have responded to a situation in a more effective manner:

5

> [P]rison officials who actually knew of a substantial risk to inmate health or safety are free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that they were deliberately indifferent. The test of deliberate indifference ensures that the mere failure of the prison official to choose the best course of action does not amount to a constitutional violation.

*Peate*, 294 F.3d at 882 (*quoted in Guzman*, 495 F.3d at 857). *See Farmer*, 511 U.S. at 847. Additionally, the Seventh Circuit has ruled that while "an immediate intervention in an inmate-on-inmate assault is not necessary," a jail official "will be held accountable if he or she is aware of the threat of an assault yet fails to take reasonable action." *Eddmonds v. Walker*, 317 Fed. Appx. 556, 558 (7th Cir. 2009).

### C.      Statement of Material Facts Not in Dispute[1]

From August 9, 2010 to August 23, 2010, Plaintiff was a pre-trial detainee at the Dearborn County Jail in Lawrenceburg, Indiana. (Complaint, ¶ 9). Plaintiff is allergic to seafood and suffers from several medical conditions, including diabetes, high blood pressure, mood swings, bi-polar disorder, and depression. (*Id.*, ¶¶ 10-11, 13). Plaintiff's treating physicians have prescribed him several medications, some of which need to be used on a daily basis. (*Id.*, ¶¶ 10, 13). Plaintiff's wife, Tracey Massong, delivered the following prescription medications, in their original containers with Plaintiff's name on them, to the jail for Plaintiff's initial incarceration: Lisinopril, epi-pen/antihistamine, Topamax, Zoloft, Suboxone, Omeprazole, and Metformin. (*Id.*, ¶¶ 12-14). The jail staff assured Mrs. Massong that Plaintiff would receive his prescription medications. (*Id.*, ¶

---

[1] The only evidence cited in support of or opposition to Defendants' motion for summary judgment is a small sample of the depositions of Plaintiff and Defendant Steele. Consequently, the court relies heavily upon the Complaint for its summary of the material facts not in dispute.

6

18).  At that time, Mrs. Massong also informed the jail staff that Plaintiff was a diabetic and allergic to seafood.  (*Id.*, ¶ 15).  The jail staff told her that it was not necessary to provide verification of Plaintiff's seafood allergy.  (*Id.*, ¶ 16).

On two Fridays during his detainment, the jail staff served fish, along with other side items, to Plaintiff.  (George Massong Deposition ("Massong Dep.") at 9-10).  Plaintiff requested an alternative meal each time, but the jail staff informed him that the kitchen was closed.  (*Id.*).  He refused to eat anything during those mealtimes because of his seafood allergy.  (*Id.* at 9).

Additionally, on three or four occasions during his detainment, Plaintiff was not given his prescription medications because the guard was confused as to whether the medications were to be given at a different time of the day or even belonged to Plaintiff in the first place: "If there was any confusion, [the guard] just wouldn't give me anything."  (*Id.* at 15).  As a result of not receiving his medications and missing meals, Plaintiff became ill on at least one occasion.  (*Id.* at 16).  According to Plaintiff, he became "very weak, very faint, dizzy . . . nauseous, and lightheaded . . . ."  He also reported experiencing hot flashes.  (*Id.*).  The symptoms became so severe that his blood sugar dropped and he "fell off the bench in the dayroom and hit the floor . . . ."  (*Id.*).

On August 17, 2010, inmates who were housed in Plaintiff's cellblock went into his cell and started an altercation with him.  (Complaint, ¶ 26).  Gerardo Delao, who was among those inmates, was later criminally charged for his role in the altercation.  (*Id.*, ¶ 27).  Shortly after the attack began, Plaintiff was hit by Mr. Delao, and subsequently staggered back to the wall of his cell.  (Massong Dep. at 29).  Plaintiff used this as an

7

opportunity to slide his hand down the wall and press the call button. (*Id.*). Pushing the call button in a cell lights up a signal in the cellblock's control area, and also activates a two-way audio system that allows inmates and jail staff to communicate with each other. (Gary Steele Deposition ("Steele Dep.") at 8). Defendant Steele responded to Plaintiff's call by asking, over the intercom, "Can I help you, what do you guys want?" (Massong Dep. at 31). Defendant Steele was able to see on the jail's video monitor that other inmates were in Plaintiff's cell. (Complaint, ¶ 31). While struggling with Mr. Delao, Plaintiff was able to yell out, "They're trying to kill me." (Massong Dep. at 31). The inmates proceeded to beat Plaintiff for approximately forty-five minutes, inflicting serious injuries to his body and head. (Complaint, ¶¶ 33-34). Defendant Steele did not come to Plaintiff's aid during the altercation. (*Id.*, ¶ 33).

      Under the rules and regulations promulgated by Defendant DCS, inmates in each cellblock are required to stay in their own cells or in the cellblock's common area. (*Id.*, ¶ 24). Inmates are not permitted to go into the cells of other inmates. (*Id.*). The purpose of this rule is to protect the safety and security of the jail inmates and staff. (*Id.*, ¶ 25).

      When the altercation ended, the inmates told Plaintiff that they would kill him if he made a report to the jail staff. (*Id.*, ¶ 35). Plaintiff then went into the common area and called Mrs. Massong. (*Id.*, ¶ 37). He quickly told her, "I was jumped and I need help." (*Id.*, ¶ 38). Mrs. Massong called the jail and reported what Plaintiff had told her. (*Id.*, ¶ 39). Defendant Steele and other jail staff responded to Mrs. Massong's call by coming into Plaintiff's cellblock and taking him to the jail nurse. (*Id.*, ¶¶ 40-41). The nurse concluded that Plaintiff's injuries were serious and needed emergency medical

treatment. (*Id.*, ¶ 42). At this time, jail staff took pictures of Plaintiff's injuries. (Massong Dep. at 40). Defendant Steele also asked Plaintiff several questions about the altercation. (*Id.*). During this discussion, Defendant Steele told Plaintiff that he thought Plaintiff and the other inmates were "playing" when the call button was pressed. (*Id.* at 42).

Plaintiff was subsequently taken to Dearborn County Hospital, where hospital staff determined that he had suffered, among other injuries, a broken nose, a broken elbow, and a concussion. (Complaint, ¶¶ 43-44). Plaintiff's head injuries have resulted in him having permanent damage to his retinas, impaired vision, migraine headaches, a splintered nasal cavity, and memory loss. (*Id.*, ¶ 45). Plaintiff's emergency room physician prescribed him medication for pain, but jail staff failed to fill the prescription or give it to him following his release on August 23, 2010. (*Id.*, ¶ 48).

### D. Section 1983 Claim Against Defendant Steele

Defendants do not contest that Plaintiff satisfies the first element of a "failure to protect" claim, as established in *Farmer*. 511 U.S. at 834. Indeed, in so far as Plaintiff alleges that he was physically attacked by other inmates during his pre-trial detention, he was indisputably "incarcerated under conditions posing a substantial risk of serious harm." *Sousa*, 481 Fed. Appx. at 267. *See Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008) ("Grieveson allegedly was assaulted by other inmates--an objectively serious danger that posed a substantial risk of serious harm to him . . . .").

Therefore, the issue before the court is whether Defendant Steele exhibited deliberate indifference when he failed to intervene in the August 17, 2010 altercation.

9

This is a question of fact that can be established through circumstantial evidence. *Farmer*, 511 U.S. at 842; *Fisher*, 414 F.3d at 662; *Peate*, 294 F.3d at 882; *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992).

The *Farmer* Court's standard for deliberate indifference can be broken into two elements. First, "the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." *Farmer*, 511 U.S. at 837. The material facts not in dispute for purposes of summary judgment show that: (1) Plaintiff exclaimed, "They are trying to kill me" after pressing the call button in his cell; (2) Defendant Steele could see other inmates in Plaintiff's cell on the jail's video monitor; and (3) the jail's rules and regulations prohibit inmates from entering the cells of other inmates for safety reasons. Thus, Defendant Steele was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." *Id.*

The second element of a deliberate indifference analysis requires that the official actually "draw the inference [that a substantial risk of serious harm exists]." *Id.* In other words, the court must determine whether Defendant Steele subjectively appreciated the risk of danger to Plaintiff. Paraphrasing the *Grieveson* Court: "[T]he inquiry is not whether [Defendant Steele] *should have* known about risks to [Plaintiff's] safety, but whether [he] *did* know of such risks." 538 F.3d at 775 (emphasis original) (citing *Farmer*, 511 U.S. at 842-43). This is the dispositive question for Defendants' motion for summary judgment.

Defendants argue that because Defendant Steele allegedly said he thought Plaintiff and the other inmates were "playing," it is clear that he did not "draw the inference," and

10

therefore, did not understand Plaintiff to be in danger.  According to Defendants, Defendant Steele might have been negligent in failing to appreciate the risk, but he was not deliberately indifferent.  Plaintiff retorts that an inmate yelling, "They are trying to kill me" presents such an obvious risk of harm that failing to take action amounts to criminal recklessness.  Plaintiff further posits that Defendant Steele may have offered the "playing" comment so as to deflect personal responsibility and hide the fact that he was deliberately indifferent.  These arguments present questions of Defendant Steele's credibility, and such questions are traditionally reserved for a jury, not a court on summary judgment.  *3M v. Pribyl*, 259 F.3d 587, 606 (7th Cir. 2001) ("[T]he jury is the body best equipped to judge the facts, weigh the evidence, determine credibility, and use its common sense to arrive at a reasoned decision.").  *See also Liberty Lobby, Inc.*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

In *Foelker v. Outagamie County*, the Seventh Circuit ruled that even if a jail official alleges that he acted with a genuine belief that an inmate was not in danger, "the case should not [be] short-circuited on summary judgment" if a reasonable jury could conclude that the jail official acted with deliberate indifference.  394 F.3d 510, 513-14 (7th Cir. 2005).  In *Foelker*, two prison guards did not seek medical attention for the plaintiff, even though he was showing signs of methadone withdrawal (e.g., he appeared "confused and disoriented" and had "defecated on the floor of his cell and on himself").

*Id.* at 513.  In reversing the district court's granting of summary judgment, the Court analyzed the guards' conduct by noting:

> . . . Although Schertz might have honestly believed, as he claims, that Foelker "was playing the system," a reasonable jury could consider that Schertz knew that Foelker had not taken his methadone and was exhibiting signs of withdrawal and thus conclude that Schertz knew there was something seriously wrong with Foelker.  It could thus conclude that Schertz recklessly or maliciously allowed the situation to fester.
> . . . .
> . . . Mandler might not have understood the severity of the situation and might have negligently believed that Foelker did not need additional medical attention.  But drawing all inferences in Foelker's favor, as we must at this stage, a reasonable jury could also conclude that Mandler intentionally allowed Foelker to suffer from the effects of his withdrawal.

*Id.*

Drawing all reasonable inferences in the light most favorable to Plaintiff, a reasonable jury in this case could determine that Defendant Steele understood the severity of the situation when Plaintiff yelled, "They're trying to kill me," and yet "allowed the situation to fester." *Id.* at 513.  Paraphrasing the *Foelker* court, "Although [Defendant Steele] might have honestly believed, as he claims, that [Plaintiff and the other inmates were "playing"], a reasonable jury could . . . conclude that [Defendant Steele] knew there was something seriously wrong." *Id.*  If a jury determined that Defendant Steele was being dishonest and purposefully chose not to intervene in the altercation between Plaintiff and the other inmates, Defendant Steele's conduct would seemingly constitute quintessential deliberate indifference.  *See Grieveson*, 538 F.3d at 778 ("If Officer Highbaugh did witness an inmate assault, but failed to intervene, his actions would seemingly constitute a paradigm case of deliberate indifference.") (internal quotation

marks omitted) (denying summary judgment). *See also Snead v. Unknown No. Of United States Bureau Of Prisons Correctional Officers*, 308 Fed. Appx. 18, 20 (7th Cir. 2009) ("[T]he paradigm case of deliberate indifference is one in which an officer witnesses an inmate assault but fails to intervene") (internal quotation marks omitted) (reversing dismissal).

There is a genuine dispute of material fact surrounding whether Defendant Steele was deliberately indifferent to Plaintiff's cry for help during the attack. Accordingly, the court denies Defendants' motion for summary judgment with respect to the Section 1983 claim against Defendant Steele.

### E. State Law Negligence Claims Against Defendant Dearborn County Sheriff

In addition to his federal law claim against Defendant Steele, Plaintiff brought a state law action for negligence against Defendant DCS. Plaintiff alleges that Defendant DCS was negligent in three respects: (1) failing to protect Plaintiff from the August 17, 2010 assault, (2) failing to provide Plaintiff with adequate health care during his detainment, and (3) failing to provide Plaintiff with adequate nutrition during his detainment. (Complaint, ¶ 49).

To establish a *prima facie* claim for negligence under Indiana law, a plaintiff asserting a claim for negligence must prove the existence of three elements: "(1) duty owed to the plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty." *Kroger Co. v. Plonski*, 930 N.E.2d 1, 6 (Ind. 2010) (citing *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007)). The Seventh Circuit

13

concluded that summary judgment in negligence cases is "rarely appropriate" because of "the multitude of factual issues which need to be resolved by the jury." *Jakubiec v. Cities Service Co.*, 844 F.2d 470, 473 (7th Cir. 1988). *Accord Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004).

Defendants argue that Defendant DCS is entitled to summary judgment because Plaintiff sued Defendant DCS in his official capacity, and thus effectively brought suit against Dearborn County itself. Defendants cite to the Supreme Court's holding in *Monell v. Department. of Social Services*, which states, "Local governing bodies, therefore, can be sued directly under Section 1983 . . . where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690 (1978). *See also Butera*, 285 F.3d at 605 (applying the *Monell* doctrine to a Section 1983 case in which a detainee filed suit against a sheriff, in his official capacity, for failing to prevent a sexual assault). Defendants contend that summary judgment is warranted because the jail officials were not acting pursuant to a policy or custom, much less an unconstitutional policy or custom, when they served fish to the Plaintiff and failed to give him his prescription medications.

Fatal to Defendants' argument is the fact that the claims against Defendant DCS were not brought pursuant to Section 1983. Rather, Plaintiff only brought state law negligence claims against Defendant DCS. (*See* Complaint, ¶ 2) ("This action is also brought against the Dearborn County Sheriff pursuant to Indiana's common law and it's Tort Claims Statute, Ind. Code 34-13-3 *et seq*.). (*See also id.*, ¶ 7) ([Defendant DCS] is

14

sued only on plaintiff's state law claims."). Plaintiff's Section 1983 claim was only brought against Defendant Steele. (*See id.*, ¶¶ 2, 8, 50). Indiana courts do not apply the *Monell* doctrine when a state law negligence claim is brought against a sheriff in his official capacity. Instead, the standard negligence framework applies. *See Putnam County Sheriff v. Price*, 954 N.E.2d 451 (Ind. 2011) (reviewing a negligence claim against the Putnam County Sheriff, who was sued in his official capacity, under the standard negligence framework).

Whereas Defendants understood the claims against Defendant DCS to be Section 1983 claims, they focus all of their analysis on proving that Defendant DCS did not act with deliberate indifference. Nowhere in their briefing do Defendants discuss the elements of negligence. Defendants have therefore failed to demonstrate the absence of a genuine dispute of material fact, as required by Rule 56(a). *Celotex*, 477 U.S. at 323; FED. R. CIV. P. 56(a). Accordingly, the court denies Defendants' motion for summary judgment with respect to the state law negligence claims against Defendant DCS.

### III.     Conclusion

For the foregoing reasons, the court finds that there are genuine disputes of material fact and Defendants are not entitled to judgment as a matter of law. Movants have failed to meet their burden under Federal Rule of Civil Procedure 56(a). Therefore

15

Defendants' Motion for Summary Judgment (Docket # 28) is **DENIED**.

**SO ORDERED** this 23rd day of September 2013.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.